UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
MARK SUSSMAN, STEFANI LOMBARDI, and
TERANCE BRIGHT,

                      Plaintiffs,                  16-cv-7659 (PKC)

       -against-                             MEMORANDUM
                                                         AND ORDER

NYP HOLDINGS, INC. and NEWSPAPER AND
MAIL DELIVERERS' UNION OF NEW YORK
AND VICINITY,

                      Defendants.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Defendant Newspaper and Mail Deliverers' Union of New York and Vicinity ("NMDU") moves for summary judgment on plaintiffs Mark Sussman, Stefani Lombardi, and Terance Bright's remaining claims for breach of NMDU's duty of fair representation. All fact discovery has been completed. Familiarity with the parties' submissions and the Court's Memorandum and Order of February 22, 2018 deciding the motion to dismiss, (Doc. 45), are necessary to an understanding of the Court's rulings. After hearing the parties at oral argument on the motion and for reasons that will be explained, NMDU's motion for summary judgment will be denied.

LEGAL STANDARD

        Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a), Fed. R. Civ. P. A fact is material if it "might affect the outcome of the suit under the

governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Anderson, 477 U.S. at 248). On a motion for summary judgment, the court must "construe the facts in the light most favorable to the non-moving party" and "resolve all ambiguities and draw all reasonable inferences against the movant." Delaney v. Bank of Am. Corp., 766 F.3d 163, 167 (2d Cir. 2014).

It is the initial burden of the movant to come forward with evidence sufficient to entitle the movant to relief in its favor as a matter of law. Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir. 2008). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Id. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)). A court "may grant summary judgment only when 'no reasonable trier of fact could find in favor of the nonmoving party.'" Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (citation omitted). Further, a district court "must ask not whether the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."

Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015). It is not appropriate for the Court to make credibility assessments or resolve conflicting versions of event presented; these are essential questions for a jury. Id.

DISCUSSION

I. Triable Issues of Fact Abound Precluding Summary Judgement in Favor of NMDU.

Based on the evidence produced, there are several genuine disputes of material fact remaining in this action. Therefore, NMDU's motion for summary judgment will be denied.

A. Statute of Limitations.

The seniority system underlying the allegedly discriminatory conduct against plaintiffs, non-union members who pay NMDU an agency fee for negotiating with their employer, was in place by 2003 when the first plaintiff was hired. By December 18, 2009, plaintiffs had filed unfair labor practice ("ULP") charges with the National Labor Relations Board ("NLRB") related to the execution of this seniority system. NMDU asserts that all of plaintiffs' claims arise from the practices complained of in the ULPs and so are time barred as breach of the duty of fair representation claims have a six-month statute of limitations. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 154–55 (1983) (applying the statute of limitations for section 10(b) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 160(b), to claims of breach of the duty of fair representation). As this action was commenced on September 29, 2016, NMDU argues plaintiffs' claims would be untimely if they accrued prior to March 30, 2016. (Doc. 71 at 18).

For a breach of the duty of fair representation action, the statute of limitations does not accrue on the date that the challenged seniority system was created, but begins to run from the time plaintiffs were affected by it. NLRB v Newspaper & Mail Deliverers' Union ("NLRB v. NMDU"), 644 Fed. App'x 16 (2d Cir 2016) (summary order) (enforcing order of the NLRB). In

response to NMDU's motion, plaintiffs have produced evidence that could permit a reasonable fact finder to conclude that the seniority system, as implemented, discriminated against plaintiffs as non-union members through the negotiation and execution of an April 21, 2016 Memorandum of Understanding and Extension Agreement (the "Extension Agreement") that perpetuated the discriminatory effects of the seniority system into the limitations period. (Stark Decl., Ex. 17 (Doc. 76-19)).

NMDU further argues that plaintiff's pre-March 2016 evidence is inadmissible to "establish a substantive violation where otherwise there would be none." (Doc. 79 at 12). However, at the summary judgment stage, the Court need not decide the parameters of admissible evidence from outside the limitations period that may be reflective of, for example, motive, intent, or absence of mistake. Rule 404(b), Fed. R. Evid.

B. Exhaustion of Remedies.

Plaintiffs are persons covered by a collective bargaining agreement ("CBA") between their employer and NMDU. "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965). The evidence submitted in opposition to summary judgment demonstrates that, on July 11, 2016, plaintiff Stefani Lombardi filed a "Contract Grievance" with the NMDU and her employer, which expressly referenced her co-plaintiffs Mark Sussman and Terance Bright. Ms. Lombardi asserted, among other things, that "[b]y continuing to refer to the [Regular Situation Holders ("RSH")] list in its current order [defendant was] discriminating against senior employees by not allowing them the same opportunity to elect to receive the buyout offered." (Stark Decl., Ex. 18 (Doc. 76-20)). This is a

key part of the harm complained of in this action. Ernie Rota, who appears to be an employee of plaintiffs' employer, replied to Ms. Lombardi's letter on July 14, 2016, noting that, in his view, only parties to the CBA, the employer or NMDU, could file a grievance. (Second Mangan Affirmation, Ex.). Fairly read, Rota then rejected Ms. Lombardi's claims out of hand. Ms. Lombardi promptly replied "To All Agents & Officers of the NMDU" on July 18, 2016, continuing to press her grievance. (Stark Decl., Ex. 19 (Doc. 76-21)). There is no evidence of a NMDU response to Ms. Lombardi's grievance.

NMDU argues that plaintiffs failed to grieve their complaint pursuant to the CBA's procedure, but this true only because NMDU, the party with the power to grieve under the CBA, arbitrarily decided not to do so. NMDU also elected not to respond directly to Ms. Lombardi, a person who apparently paid agency fees to NMDU over an extended period of time. Plaintiffs have established without contradiction that they "attempt[ed] use of the contract grievance procedure agreed upon by [their] employer and union." Id. As the NMDU refused, without justification, to press plaintiff's grievance, the exhaustion requirement is excused. Id.

    C. <u>Breach of the Duty of Fair Representation</u>.

The Extension Agreement provided for buyouts of twenty-three individuals based upon the existing seniority system at $95,000 per person. By operation of the Extension Agreement and the seniority system, plaintiffs were ineligible to receive such a buyout. Prior to entering into the Extension Agreement, NMDU was squarely on notice that the seniority system upon which the Extension Agreement apportioned the buyouts was unlawful. Specifically, by this time, the NLRB had upheld the findings of an Administrative Law Judge and concluded that "[b]y maintaining and applying these preferences for union members while disfavoring nonmembers, the [NMDU] caused the [employers] to discriminate against employees because of their lack of

representation by a union." Newspaper & Mail Deliverers' Union of New York & Vicinity (NYP Holdings, Inc., d/b/a New York Post) & Stefani Cotler, 361 NLRB 245, 249 (Aug. 21, 2014). Further, again prior to the execution of the Extension Agreement, the NLRB successfully petitioned the United States Court of Appeals for the Second Circuit to enforce its August 21, 2014 ruling. NLRB v. NMDU, 644 Fed. App'x 16. The ruling of the NLRB and the Second Circuit's enforcement of this ruling placed the NMDU on notice that the seniority system perpetuated by the Extension Agreement was unlawful.

Plaintiffs have demonstrated that there is a genuine issue of fact as to whether a nondiscriminatory seniority system would have permitted them to enjoy the benefits of the buyout offers if they had so elected. (See, e.g., Stark Decl., Exs. 4–5, 8–13; Lombardi Decl.). Based on this evidence, a reasonable fact finder could conclude that NMDU acted arbitrarily and in bad faith during the negotiation and execution of the Extension Agreement because NMDU knew this agreement would perpetuate a discriminatory seniority system. A reasonable fact finder could also conclude that NMDU's actions were intentional or were so far outside the range of reasonableness or so far short of the minimum standards of fairness to the plaintiff-employees as to be arbitrary. See Sanozsky v. Int'l Ass'n of Machinists & Aerospace Workers, 415 F3d 279, 282 (2d Cir. 2005); NLRB v. Local 282, Int'l Bhd. of Teamsters, 740 F2d 141, 147 (2d Cir. 1984).

D. Primary Jurisdiction.

NMDU again argues that the Court lacks jurisdiction over plaintiff's claims, which are the exclusive preserve of the NLRB. (Doc. 71 at 19–20). The Court carefully considered NMDU's jurisdictional arguments on the motion dismiss, finding that it possessed jurisdiction to hear plaintiff's remaining claims. (Doc. 45 at 14–18). The Court notes, as discussed above, that plaintiffs have produced evidence upon which a reasonable fact finder could conclude that

NMDU's actions were arbitrary, discriminatory, or in bad faith. Beyond that, neither has there been a change in controlling law nor has new evidence been introduced bearing on this finding and, as such, the Court will not revisit it.

    E.  <u>Remedy</u>.

NMDU urges the Court to stay this action pending the outcome of the NLRB's compliance proceeding. However, NMDU has not demonstrated, at this juncture, that any relief awarded in this action would conflict with any NLRB remedial action. When, as, and if this action reaches the remedy and relief stage, the Court may revisit this issue.

CONCLUSION

Having considered the balance of the arguments on defendant NMDU's motion for summary judgment, the Court holds that this motion is DENIED. (Doc. 69).

SO ORDERED.

                                          P. Kevin Castel
                                  United States District Judge

Dated: New York, New York
         February 10, 2020